**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT ASHLAND**

**CIVIL ACTION NO. 14-140-DLB-EBA**

**BRANDY BOND and B.E.R.B., a Minor,**                             **PLAINTIFFS**
**by and through her Natural Guardian**
**and Next Friend, Carla Ann Baker**


**vs.**                    **MEMORANDUM OPINION AND ORDER**


**CARTER COUNTY, KENTUCKY, et al.**                     **DEFENDANTS**

*************************

## I.    Introduction

Carter County, Kentucky and the Carter County Sheriff's Office (collectively, "the

Carter County Defendants") move to dismiss state tort claims asserted by Brandy Bond and

her minor sister B.E.R.B.  The Carter County Defendants first argue that Carter County,

Kentucky is entitled to sovereign immunity under Kentucky law.  They then contend that the

Carter County Sheriff's Office cannot be held liable on a *respondeat superior* theory

because Deputy Sheriff Matthew Morrison did not act in furtherance of its interests.  Finally,

the Carter County Defendants ask the Court to dismiss Plaintiffs' claim for negligent

retention, training and supervision because the Complaint does not set forth sufficient facts

stating a plausible claim for relief.  The Court has jurisdiction over this matter pursuant to

28 U.S.C. §§ 1331, 1367.

## II.    Factual and Procedural Background

On September 14, 2013, Carter County Deputy Sheriff Matthew Morrison paid a visit

1

to Bond's residence, where she lived with her mother, her minor sister B.E.R.B. and her five children. (Doc. # 1, p. 4, ¶ 12-13). Because Deputy Morrison was on duty at the time, he arrived at her house in his official law enforcement vehicle, dressed in his uniform and wearing his sidearm. (*Id*.). Deputy Morrison stated that he was there on official law enforcement business concerning B.E.R.B. (*Id*.). He then spoke with Bond about an outstanding warrant issued against her in nearby Rowan County. (*Id*.). Specifically, he told her that she could either perform oral sex on him or go to jail. (*Id*. at p. 4, ¶ 14).

Although Bond did not want to engage in oral sex with Deputy Morrison, she was afraid of what might happen to her children if she was arrested, so she reluctantly acquiesced to his demand. (*Id*.). She and Deputy Morrison retreated to an empty room in the house, but the door would not close completely, so she asked B.E.R.B. to guard it and make sure that her children were not exposed to the scene. (*Id*.). B.E.R.B. did as Bond requested, fearing that she might be next. (*Id*.). Deputy Morrison allegedly kept one hand on Bond's breast and another on his sidearm throughout their tryst. (*Id*.). When they were finished, he told her that he would "put her warrant at the bottom of the pile" and left the house. (*Id*.).

Bond and B.E.R.B. filed this civil action on September 12, 2014. (*Id*. at p. 1). Bond brings a 42 U.S.C. § 1983 against Deputy Morrison, individually and in his official capacity, alleging a violation of her substantive due process rights. (*Id*. at p. 5-6, ¶ 16-22). She then asserts state law claims for battery, assault, unlawful imprisonment and outrage against Deputy Morrison. (*Id*. at p. 6-9, ¶ 23-41). B.E.R.B. also brings a claim for outrage against Deputy Morrison. (*Id*. at p. 9-10, ¶ 42-45). Both Plaintiffs seek to hold the Carter County Defendants liable for their state tort claims on a *respondeat superior* theory. (*Id*. at p. 6-10,

2

¶ 23-45).  They then assert a claim for negligent retention, training and supervision against the Carter County Defendants.  (*Id.* at p. 10-12, ¶ 46-51).

## III.   Analysis

### A.   Standard of Review

A complaint must include a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).   It must also contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)(quoting *Twombly v. Bell Atl. Corp.*, 550 U.S. 544, 570 (2007)).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*   "[A] formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.   Moreover, the Court "is not bound to accept as true unwarranted factual inferences, or legal conclusions unsupported by well-pleaded facts."  *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 276 (6th Cir. 2010).

### B.   42 U.S.C. § 1983 Claim

As explained in their Motion to Dismiss, the Carter County Defendants focus solely on the state law tort claims:

> The text of Count I of the Plaintiff's Complaint does not assert a claim under 42 U.S.C. § 1983 against the Carter County Defendants, which is reasonable as courts have held that employers cannot be held vicariously liable for claims under that section.  *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978) (stating that "a municipality cannot be held liable *solely* because it employs a tortfeasor–or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."). However, in the Plaintiffs' Prayer for Relief, they seek "[j]udgment against Defendant Carter County, Kentucky and/or Defendant Carter County Sheriff's Office under Counts I through VII as alleged herein including compensatory

and punitive damages."   As only Counts II through VII recite any claims against the Carter County Defendants, it is presumed that this statement in the Prayer for Relief is in error, and the Motion is limited to Counts II through VII.  If the Plaintiffs assert otherwise, the Carter County Defendants reserve the right to file a responsive pleading to Count I.

(Doc. # 5-1 at p. 1-2, n. 1).

The Carter County Defendants are correct in stating that they are not named in Count I of the Complaint.  However, Count I does assert a § 1983 claim against Deputy Morrison, both individually *and in his official capacity*.  Because official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent," Plaintiffs' § 1983 claim against Deputy Morrison in his official capacity is essentially a claim against the Carter County Defendants.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (stating further that "[a]s long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity").  The Court brings this to the Carter County Defendants' attention because "a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself."  *Id.* at 166.

###    C.    *Sovereign Immunity*

"When assessing whether defendants are entitled to immunity from state law tort liability, the Court must apply Kentucky rules of sovereign immunity."  *Ivey v. McCreary Cnty. Fiscal Ct.*, 939 F. Supp. 2d 762, 765 (E.D. Ky. 2013).  Under Kentucky law, "[a] county government is cloaked with sovereign immunity."  *Schwindel v. Meade Cnty.*, 113 S.W.3d 159, 163 (Ky. 2003); *see also Franklin Cnty., Ky. v. Malone*, 957 S.W.2d 195, 203 (1997) ("This court has repeatedly enunciated the rule that a county has the same sovereign immunity as the state.") (overruled on other grounds).  However, sovereign

4

immunity is subject to waiver by the Kentucky Legislature. *Withers v. Univ. of Ky.*, 939 S.W.2d 340, (1997) (stating that "[w]e will find waiver only where stated by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction" ) (internal quotations omitted).

In this case, Plaintiffs assert six state law tort claims against Carter County, Kentucky.  As a Kentucky county, Carter County is entitled to sovereign immunity unless the Kentucky Legislature has explicitly waived such immunity.  The Court being unaware of any such waiver, and none having been identified by Plaintiffs, Counts II through VII against Carter County, Kentucky must be dismissed.

### D.    *Respondeat Superior*

Historically, a sheriff enjoyed "absolute official immunity for tortious acts and omissions of his deputies."  *Jones v. Cross*, 260 S.W.3d 343, 346 (Ky. 2008). However, KRS § 70.040 provides:

> [t]he sheriff shall be liable for the acts or omissions of his deputies; except that, the office of sheriff, and not the individual holder thereof, shall be liable under this section.  When a deputy sheriff omits to act or acts in such a way as to render his principal responsible, and the latter discharges such responsibility, the deputy shall be liable to the principal for all damages and costs which are caused by the deputy's act or omission.

The Kentucky Supreme Court has held that "the legislative waiver of immunity is very clear, and [ ] the plain language of KRS [§] 70.040 leaves no room for any other reasonable construction than a waiver of the sheriff's official immunity (the office of sheriff) for the tortious acts or omissions of his deputies."  *Jones*, 260 S.W.3d at 346.

Kentucky law is less clear about *when* liability attaches to a sheriff under KRS § 70.040.  What elements must a plaintiff prove to recover?  What kinds of tortious acts will

5

be imputed to the sheriff?  In *Lawson v. Burnett*, the Kentucky Court of Appeals, then

Kentucky's highest state court, suggested that the sheriff will be liable when his deputy acts

within the scope of his authority, but not when he is driven by personal motives:

> KRS 70.040 states that 'The sheriff shall be liable for the acts or omissions
> of his deputies.'  In *Johnson v. Williams, Adm'r.*, 63 S.W. 759 (1901), we
> wrote 'If the act from which the injury resulted was an official act * * * the
> sheriff is answerable,' but the sheriff is not responsible for a personal act of
> his deputy.  Many cases of this court so holding are listed in 1 A.L.R. 236 and
> 102 A.L.R. 182.  This is the general rule.  Also see 116 A.L.R. 1070.  In 3
> C.J.S. Agency s 258, p. 193, it is said *'Where, however, the willful wrong of
> the agent is impelled by motives wholly personal to himself, the act is
> committed outside the scope of his authority and the principal is not liable for
> the tort.'*  Also see *City of Lexington v. Yank*, 431 S.W.2d 892 (1968).

471 S.W.2d 726, 728 (Ky. 1971) (emphasis added); *accord Harlan Cnty. v. Browning*, No.

2012-CA-000148-MR, 2013 WL 657880, at *3, n. 4 (Ky. Ct. App. Feb. 22, 2013) (noting

that "as to the ultimate liability of the sheriff, the course and scope of the deputy's duties

may be relevant," but did not pursue the inquiry because it was "not at issue in this

appeal").

This begs the question: where do courts draw the line between personal acts and

those committed within the scope of a deputy's authority?  Kentucky case law yields no

answer in the context of KRS § 70.040, so the Court must look elsewhere for guidance.

Because KRS § 70.040 imposes vicarious liability on the sheriff for certain acts of his

deputies, it is essentially a statutory incarnation of the *respondeat superior* doctrine.  Thus,

the Court will refer to common law *respondeat superior* principles in conducting its analysis.

The *respondeat superior* doctrine provides that an "employer is only liable for acts

of his employee committed in the scope of the employment."  *Patterson v. Blair*, 172

S.W.3d 361, 364 (Ky. 2005).  "The central difficulty in applying the rule of respondeat

superior focuses on [the 'scope of employment' language], especially when the tort in question was intentional (as opposed to merely the result of negligence)." *Id.* at 366. Although the scope of employment inquiry historically centered on the foreseeability of the misconduct, Kentucky courts now focus on the "servant's purpose or motive." *Id.* at 368-69. Stated another way:

> Kentucky's approach is precisely the standard advanced by Prosser and Keeton when they explained that 'in general, . . . the master is held liable for any intentional tort committed by the servant where its purpose, however misguided, is wholly or in part to further the master's business.' Prosser and Keeton at 505. Thus, *if the servant 'acts from purely personal motives . . . which [are] in no way connected with the employer's interests, he is considered in the ordinary case to have departed from his employment, and the master is not liable.' Id.* at 506. This sound approach also conforms to the economic theory of vicarious liability, discussed above, because when the employee acts for solely personal reasons, the employer's ability to prevent the tort is limited. *See* Landes and Posner at 208-09.

*Id.* (emphasis added).

With these principles in mind, courts have held that "[o]rdinarily, an employer is not vicariously liable for an intentional tort of an employee not actuated by a purpose to serve the employer but motivated, as here, solely by a desire to satisfy the employee's own sexual proclivities." *Am. Gen. Life & Acc. Ins. Co. v. Hall*, 74 S.W.3d 688, 692 (Ky. 2002); *see also Osborne v. Payne*, 31 S.W.3d 911, 915 (Ky. 2000) (finding that vicarious liability did not attach when a priest had an affair with the wife of a couple seeking marriage counseling); *Z.A. v. City of Louisville*, No. 2004-CA-00189-MR, 2005 WL 1491554, at *5 (Ky. June 24, 2005) (declining to impose vicarious liability when a library employee sexually molested a patron); *Flechsig v. United States*, 991 F.2d 300, 302-03 (6th Cir. 1993) (affirming the district court's conclusion that, under Kentucky law, a corrections officer acted outside the scope of his employment when he sexually assaulted an inmate en route to a

doctor's appointment).

Plaintiffs' Complaint states that "Defendant Carter County and/or Defendant Carter County Sheriff's Office are vicariously liable for the state claims . . . based upon the doctrine of *respondeat superior*." (Doc. # 1, p. 7-20, ¶ 27, 32, 36, 41 and 45). They later change tack, arguing in their Response to the Motion to Dismiss that they "need not satisfy the requirements necessary to hold Defendant Carter County Sheriff's Office vicariously liable under the theory of *respondeat superior* for the tortious conduct of Defendant Morrison as liability would be imposed pursuant to KRS 70.040." (Doc. # 9 at 3).

This argument reflects a fundamental misunderstanding of KRS § 70.040. The statute is an explicit waiver of sovereign immunity as to the sheriff's office–it does not stand for the proposition that the sheriff's office is strictly liable for *all* tortious acts committed by deputies, regardless of whether they are personally or officially motivated. As explained above, case law suggests that liability under KRS § 70.040 is predicated on the same factors that govern common law *respondeat superior* liability. This makes sense from a practical perspective. The *respondeat superior* doctrine incentivizes employers to select prudent employees to further their business interests. It would be unfair to impose liability on employers for torts committed by an employee acting in his own self-interest, as employers are not well-equipped to prevent such torts.

In this case, Deputy Morrison went to Plaintiff Bond's house while on duty and told her that he was there on official law enforcement business. He then told Plaintiff Bond that there was an outstanding warrant for her arrest out of Rowan County. Up to this point, his actions are more or less consistent with the interests of the Carter County Sheriff's Office. However, Deputy Morrison decided to forsake the interests of the Sheriff's Office for his

8

own personal gratification when he told Plaintiff Bond that she would be arrested unless she performed oral sex on him.  He further departed from his employment by telling Plaintiff Bond that he was going to put her warrant "at the bottom of the pile" in exchange for these sexual favors.  Because Deputy Morrison was not furthering the interests of the Sheriff's Office when he committed these torts, liability will not attach to the Office under § 70.040.  For these reasons, the Carter County Sheriff's Office is entitled to dismissal of Counts II through VI.

### E.    Failure to State a Claim

"Kentucky's recognition of torts based upon negligent hiring, negligent training, negligent supervision, and negligent retention is well established."  *See MV Transp., Inc. v. Allgeier*, 433 S.W.3d 324, 336 n. 10 (Ky. 2014).  The basic premise is that "an employer can be held liable when its failure to exercise ordinary care in hiring or retaining and employee creates a foreseeable risk of harm to a third person."  *Oakley v. Flor-Shin, Inc.*, 964 S.W.2d 438, 442 (Ky. Ct. App. 1998).

Count VII of the Complaint asserts such a claim:

That Defendant Carter County, Kentucky and/or Defendant Carter County Sheriff's Office breached its duty to exercise reasonable or ordinary care in the hiring, retention, training or supervision of Defendant Morrison as Deputy Carter County Sheriff and Defendant Carter County, Kentucky and/or Defendant Carter County Sheriff's Office was negligent and careless, or grossly negligent, or reckless in the retention, training or supervision of Defendant Morrison *as Deputy Carter County Sheriff's Office knew or should have known that Defendant Morrison had engaged – upon information and belief – in conduct similar [to] that in which Plaintiff Bond was subjected as alleged herein and/or that he posed an unreasonable risk to females similarly situated*, or when Defendant Carter County, Kentucky and/or Defendant Carter County Sheriff's Office failed to train or to adequately train Defendant Morrison as Deputy Carter County Sheriff, and/or when Defendant Carter County, Kentucky and/or Defendant Carter County Sheriff's Office failed to supervise or to adequately supervise Defendant Morrison as Deputy Carter

County Sheriff.

(Doc. # 1, p. 12, ¶ 49) (emphasis added).

The Carter County Defendants argue that Count VII fails to state a claim upon which relief may be granted because it merely cites the elements of the cause of action in formulaic fashion.  However, Plaintiffs go beyond a recitation of the basic elements in stating that the Carter County Sheriff's Office knew or should have known that Deputy Morrison had engaged in similar conduct, and thus, posed an unreasonable risk to females such as Plaintiff Bond.  These factual allegations, accepted as true, would allow the Court to draw the reasonable inference that the Carter County Sheriff's Office is liable for the misconduct alleged.  That is precisely what the *Twombly-Iqbal* pleading standard requires.  Because Count VII states a claim for relief that is plausible on its face, the Carter County Defendants are not entitled to dismissal of that claim.

## IV.   Conclusion

Accordingly, for reasons stated herein,

**IT IS ORDERED** that the Carter County Defendants' Motion to Dismiss (Doc. # 5) be, and is, hereby **granted** as to Counts II through VI and **denied** as to Count VII.

This 9th day of June, 2015.



Signed By:

*David L. Bunning*

United States District Judge

G:\DATA\Opinions\Ashland\14-140 MOO Granting MTD.wpd